**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 08-60668-CIV-UNGARO

MICROSOFT CORPORATION, a Washington
corporation,

      Plaintiff,

v.

CIETDIRECT.COM LLC, a Florida limited liability
company, d/b/a CIETDIRECT.COM; ADM
MANAGING, INC., a Florida corporation; AARON
MARKIZER, individually; and JOHN DOES 1-5,

      Defendants.

_____/

**<u>ORDER ON MOTION TO DISMISS</u>**

      THIS CAUSE is before the Court upon Defendants' Motion to Dismiss Complaint and

Alternative Motion for More Definite Statement, filed July 3, 2008.  (D.E. 16.)  Plaintiff filed its

response on July 21, 2008, (D.E. 19), to which Defendants replied on July 28, 2008.  (D.E. 21.)

The matter is ripe for disposition.

      THE COURT has considered the motion and the pertinent portions of the record and is

otherwise fully advised in the premises.

<u>BACKGROUND</u>

      The Court recites the following facts taken from Plaintiff's complaint and accepted as

true for the purpose of deciding Defendants' motion to dismiss.

      This is an action for damages and injunctive relief arising out of Defendants' alleged

infringement of Plaintiff's copyrights in its software.  Plaintiff alleges that until at least February

2008, Defendants were actively engaged in the illegal and unlawful business of importing to the

United States copyrighted Microsoft Student Media software that was manufactured abroad and

intended for schools and other qualified educational users abroad, and distributing that software in the United States without approval or authorization from Microsoft.

Plaintiff "develops, advertises, markets, distributes and licenses computer software programs," and it "distributes Student Media software at a discount to provide students in the United States, in developing nations, and worldwide low cost access to the latest software technology and information in furtherance of their educational development." (Compl. ¶¶ 10-11.) The "Student Media program is intended only for students at qualified educational institutions and the license agreements under which such media is distributed restrict the distribution of such media to those students." (Compl. ¶ 11.) In "the United States, an institution enrolled in one of the special academic programs may order Student Media software throughout the term of its agreement only from Authorized Education Resellers ("AERs")," which are "specially trained and authorized to distribute Student Media to qualified education users." (Compl. ¶ 12.) "Academic institutions, AERs, and students are prohibited from reselling Student Media software because the programs through which Student Media software is distributed are designed to provide low cost software to qualified students, and not to the general public." (Compl. ¶ 12.) "Microsoft also imposes geographic restrictions on the distribution of Microsoft products, including Student Media software," *e.g.*, "Student Media software is distributed to Europe, the Middle East, or Africa and is not licensed for use in North America." (Compl. ¶ 13.) Plaintiff "has developed, advertises, markets, distributes, and licenses a software package known as Microsoft Windows XP ("Windows XP")," and it holds a valid copyright in Windows XP. (Compl. ¶ 14 & Ex. 1.)

In support of its claims for copyright infringement, Plaintiff alleges that for an unknown

period of time continuing to the present, Defendants have conspired to and are actively engaged in importing to the United States unknown quantities of Microsoft Student Media software that was manufactured and licensed for use outside of the United States, without approval or authorization from Microsoft, and distributing that Student Media to individuals and entities not qualified to use the software without approval or authorization from Microsoft.  (Compl. ¶ 15.) Plaintiff alleges that Defendants "are attempting to exploit the difference between the retail prices of Microsoft software in the United States and the reduced prices of Microsoft software licensed for educational use abroad."  (Compl. ¶ 15.)

Plaintiff alleges that on or about February 19, 2008, and again on or about February 27, 2008, an investigator placed an order for one unit of a Microsoft product known as Windows XP Professional x64 Edition from the CietDirect Defendants through their web site," and that upon examination it was determined that "it was infringing because it was Student Media licensed for exclusive distribution to qualified educational users participating in a special academic licensing program."  (Compl. ¶ 19.)  "Additionally, the software was manufactured outside the United States and was not licensed for distribution or use in the United States."  (Compl. ¶ 19.)  "Upon information and belief, the John Doe Defendants imported this software to the United States and/or distributed the software in interstate commerce to the CietDirect Defendants."  (Compl. ¶¶ 19-20.)  Plaintiff alleges that "Defendants' violations are willful, deliberate and committed without prior notice and knowledge of Microsoft's copyrights."  (Compl. ¶ 20.)

Plaintiff's complaint consists of two counts including copyright infringement in violation of 17 U.S.C. § 501 *et seq*. (Count I), and infringing importation of copyrighted works in violation of 17 U.S.C. § 602 (Count II).  Defendants move the Court to dismiss Plaintiff's complaint in its

entirety pursuant to Rule 12(b)(6) for failure to state a claim and pursuant to Rule 12(b)(7) for

failure to join a party under Rule 19.  In the alternative, Defendants move the Court for a more

definite statement pursuant to Rule 12(e).

I.      DEFENDANTS' RULE 12(b)(6) MOTION

        A.      Legal Standard Applicable to Rule 12(b)(6) Motion to Dismiss

        Under Rule 12(b)(6), the defendant may move to dismiss for failure to state a claim.  Fed.

R. Civ. P. 12(b)(6).  In deciding a motion to dismiss, the Court must view the complaint in the

light most favorable to the plaintiff.  *Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969).

Moreover, "the scope of [the Court's] review is limited to the four corners of the complaint." *St.*

*George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002); *see also Brooks v. Blue Cross*

*and Blue Shield of Florida*, 116 F.3d 1364, 1368 (11th Cir.1997) (observing that 12(b)(6)

motions are "limited primarily to the face of the complaint and attachments thereto").   While a

complaint does not need to set forth detailed factual allegations to survive a motion to dismiss,

the factual allegations "must be enough to raise a right to relief above the speculative level." *Bell*

*Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).  "Once a claim

has been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint." *Id*. at 1969; *see also* Fed. R. Civ. P. 8(a) (requiring "a short and

plain statement of the claim showing that the pleader is entitled to relief").[1]   Moreover, the Court

---

[1]The Supreme Court recently "retired" the oft-quoted *Conley v. Gibson* standard that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which could entitle him to relief. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (discussing  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The Supreme Court's recent decision in *Twombly* clarified that the *Conley* Court's "no set of facts" language is a gloss on the accepted pleading standard that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 1969. The *Twombly* Court rejected a literal reading

must, "at this stage of the litigation, . . . accept [the plaintiff's] allegations as true." *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *see also Brooks*, 116 F.3d at 1369.  Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law.  *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 922 F.2d 1171, 1174 (11th Cir. 1993); *see also Wagner v. Daewoo Heavy Indus. Am. Corp.*, 289 F.3d 1268, 1270 (11th Cir. 2002), *rev'd on other grounds*, 314 F.3d 541 (11th Cir. 2002) (en banc) ("In assessing whether a complaint is sufficient . . . conclusory allegations, unwarranted factual deductions, and conclusions of law need not be accepted as true.").  The Eleventh Circuit has stated that "the threshold of sufficiency to which a complaint is held at the motion-to-dismiss stage is 'exceedingly low.'" *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 880 (11th Cir. 2003).

B.     Analysis: Whether Plaintiff's Claims Must Be Dismissed Pursuant to Rule
         12(b)(6) for Failure to State a Claim

Defendants argue that Plaintiff's complaint must be dismissed for failure to state a claim because Plaintiff has failed to allege facts sufficient to overcome the "first sale" doctrine. Specifically, Defendants argue that Plaintiff's claim is fatally deficient because Plaintiff has failed to allege: (1) the place of Microsoft's first sale of the Windows XP Professional x64 Edition product here at issue (Windows XP Professional), (2) the entity to which Microsoft first sold Windows XP Professional, (3) the place where Microsoft manufactured Windows XP Professional, and (4) any history as to whether Windows XP Professional was exported from the United States prior to being imported back into the United States, and Microsoft's role in that

---

of the *Conley* "no set of facts" language and explained that the *Conley* language merely "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.*

process.

Plaintiff argues that the "first sale" doctrine is an affirmative defense, and therefore cannot serve as the basis for dismissal of its claims. Plaintiff further argues that based on the allegations in the complaint and construing them in the light most favorable to Plaintiff, the "first sale" doctrine is inapplicable because it has alleged that the copyrighted software here at issue was distributed by license, not by sale. Lastly, Plaintiff argues that even assuming it has alleged that the copyrighted software here at issue was distributed by sale, the "first sale" doctrine is inapplicable to its claims because the doctrine does not apply to copyrighted works manufactured abroad, intended for distribution abroad, and imported into the United States without the copyright owner's authorization.

"Orders under Rule 12(b)(6) are not appropriate responses to the invocation of defenses, for plaintiffs need not anticipate and attempt to plead around all potential defenses. Complaints need not contain *any* information about defenses and may not be dismissed for that omission. Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Xechem, Inc. v. Bristol-Meyers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). The essence of Defendants' Rule 12(b)(6) motion is not that Plaintiff has failed to plead facts sufficient to state a claim for copyright infringement, but rather, that Plaintiff has failed to plead facts sufficient to overcome the "first sale" doctrine defense. Accordingly, the Court must determine whether Plaintiff has "admit[ted] all the ingredients of an impenetrable defense." *See Xechem*, 372 F.3d at 901.

Section 501(a) of Title 17 of the United States Code provides:

6

Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a), or who imports copies of phonorecords into the United States in violation of section 602, is an infringer of the copyright or right of the author, as the case may be.

Section 106(3) gives the copyright owner the exclusive right "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending."  However, the copyright owner's exclusive right to distribution pursuant to section 106(3) is limited by section 109(a), which codifies the "first sale" doctrine, and provides: "Notwithstanding the provisions of section 106(3), the owner of a particular copy or phonorecord lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord."

17 U.S.C. § 602(a) provides in relevant part:

Importation into the United States, without the authority of the owner of copyright under this title, of copies or phonorecords of a work that have been acquired outside the United States is an infringement of the exclusive right to distribute copies or phonorecords under section 106, actionable under section 501.

The Supreme Court in *Quality King Distributors, Inc. v. L'Anza Research Int'l, Inc.*, 523 U.S. 135, 138, 154 (1998) held that "the right granted by § 602(a) is also limited by §§ 107 through 120," or, more narrowly, that  "the 'first sale' doctrine endorsed in § 109(a) is applicable to imported copies."  However, the case before the *Quality King* Court involved copies manufactured in the United States by the copyright owner, and then first sold by the copyright owner to a foreign purchaser who subsequently resold the copies for importation to and distribution in the United States.  *Id.* at 139-40.  As Justice Ginsburg recognized in her concurrence, the *Quality King* Court did not "resolve cases in which the allegedly infringing

7

imports were manufactured abroad." *Id.* at 154.

Indeed, it appears that the prevailing view on the issue is that "sales *abroad* of foreign manufactured United States copyrighted materials do not terminate the United States copyright holder's exclusive distribution rights in the United States under §§ 106 and 602(a)." *Summit Technology, Inc. v. High-Line Medical Instruments Co.*, 922 F. Supp. 299, 312 (C.D. Cal. 1996) (citations omitted); *see also Columbia Broadcasting System, Inc. v. Scorpio Music Distributors, Inc.*, 569 F. Supp. 47, 49-50 (E.D. Pa. 1983), *aff'd*, 738 F.2d 421 (3d Cir. 1984). Section 602(a) "clearly provides protection to domestic copyright owners in the classic 'gray market' goods situation: where the domestic copyright owner's copies (which were intended for domestic sale) are placed in competition with identical copies manufactured abroad." *Summit Technology*, 922 F. Supp. at 312 (citing Nimmer & Nimmer, *Nimmer on Copyright* § 8.12 [B] [6] n.104 ("[I]t is accurate to state that the Copyright Act bars the importation of gray market goods.")). "In other words, under § 602(a), if a U.S. copyright holder licenses other entities to manufacture and sell copies of its works outside the United States, that copyright owner can prevent these foreign manufactured and purchased works from being sold and competing in the *domestic* market." *Id.*

In its complaint, Plaintiff has alleged that Defendants have conspired to and are actively engaged in importing to the United States unknown quantities of Microsoft Student Media software that was manufactured and licensed for use outside of the United States, without approval or authorization from Microsoft, and distributing that Student Media to individuals and entities not qualified to use the software without approval or authorization from Microsoft. In particular, Plaintiff has alleged that on or about February 19, 2008, and again on or about February 27, 2008, an investigator placed an order for one unit of a Microsoft product known as

Windows XP Professional x64 Edition from the CietDirect Defendants through their web site, and that upon examination it was determined that it was infringing because it was Student Media licensed for exclusive distribution to qualified educational users participating in a special academic licensing program.  Additionally, Plaintiff has alleged that the relevant software was manufactured outside the United States and was not licensed for distribution or use in the United States.

Taking these allegations to be true, as the Court must at this stage in the litigation, the Court finds that Plaintiff has pled actionable claims for copyright infringement, and has not "admitted all the ingredients of an impenetrable defense."  Rather, Plaintiff has alleged that the copyrighted software here at issue was manufactured abroad, and was not licensed for distribution or use in the United States.  Thus, a sale abroad of such copyrighted material would not terminate Plaintiff's exclusive distribution rights in the United States under §§ 106 and 602(a).  In other words, assuming Plaintiff's allegations to be true, the "first sale" doctrine would not bar Plaintiff's copyright claims because the copyrighted software at issue was manufactured and first sold abroad.  *See, e.g.*, *Summit Technology*, 922 F. Supp. at 312; *see also Swatch S.A. v. New City, Inc.*, 454 F. Supp. 2d 1245, 1253-55 (S.D. Fla. 2006); *Parfums Givenchy, Inc. v. Drug Emporium, Inc.*, 38 F.3d 477, 481-82 (9th Cir. 1994); *BMG Music v. Perez*, 952 F.2d 318, 319 (9th Cir. 1991); *Scorpio Music Distributors*, 569 F. Supp. at 49-50.  Accordingly, Defendants' Rule 12(b)(6) motion for failure to state a claim must be denied.

II.     DEFENDANTS' RULE 12(b)(7) MOTION

Defendants argue that Plaintiff's complaint must be dismissed for failure to join a party under Rule 19 because Plaintiff has failed to name (1) its business partners, and (2) Technology

Enterprises, LLC ("Technology Enterprises") as Defendants in the lawsuit.  Plaintiff argues that

Defendant's Rule 12(b)(7) motion must be denied because Technology Enterprises and

Microsoft's business partners are not indispensable parties under Rule 19.

With respect to motions to dismiss pursuant to Rule 12(b)(7), the "courts are loathe to

grant motions to dismiss of this type." *Sever v. Glickman*, 298 F. Supp. 2d 267, 275 (D. Conn.

2004).  Therefore, "'a 12(b)(7) motion will not be granted because of a vague possibility that

persons who are not parties may have an interest in the action.'" *Id*. (quoting Wright and Miller,

Federal Practice and Procedure § 1359 (2d ed. 2003)).  "In general, dismissal is warranted only

when the defect cannot be cured."  *Id*.  A determination on "a motion to dismiss for failure to

join a necessary and indispensable party requires the Court to accept the allegations of the

complaint as true, and the [c]ourt may go outside the pleadings and look at extrinsic evidence."

*Rotec Indus., Inc. v. Aecon Group, Inc.*, 436 F. Supp. 2d 931, (N.D. Ill. 2006) (citing *Davis Co. v.

Emerald Casino, Inc.*, 268 F. 3d 477, 479-80 n. 2, 4 (7th Cir. 2001)).  The defendants have the

burden of showing that the plaintiff has failed to join a necessary and indispensable party.  *Id*.

(citing *Ilan-Gat Eng'rs, Ltd. v. Antigua Int'l Bank*, 659 F.2d 234, 242 (D.C. Cir. 1981); *Ploog v.

HomeSide Lending, Inc.*, 209 F. Supp. 2d 863, 873 (N.D. Ill. 2002)).

Rule 19(a)(1) provides that a person must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing
parties; or

(B) that person claims an interest relating to the subject of the action and is so
situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the
interest; or

10

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

In support of their motion, Defendants argue that Microsoft's business partners and Technology Enterprises are indispensable parties because: (1) Microsoft's business partners are the first sale purchasers of the copyrighted software here at issue, and therefore, "Microsoft's authorized business partners are the necessary starting point of any alleged infringement activity," and they would therefore be liable for the alleged copyright infringement; and (2) Technology Enterprises, which is Defendants' supplier, would also be liable for the alleged copyright infringement, and is currently being sued by Microsoft in a separate lawsuit pending in the Southern District of Florida.  Therefore, Defendants argue, the requirements set forth in Rule 19(a)(1)(B) are satisfied.

Despite Defendants' foregoing arguments, the Court finds that they have not met their burden of showing that Plaintiff has failed to join a necessary and indispensable party.  As to both Technology Enterprises and Microsoft's business partners, Defendants have not demonstrated (1) how Plaintiff's failure to name them as Defendants will preclude the Court from according complete relief among the existing parties or (2) how disposing of this action in their absence will impair or impede their ability to protect their interest in the subject of this action or leave an existing party subject to substantial risk of incurring greater or inconsistent obligations because of their interest.

Defendants argue that Plaintiff's business partners are necessary and indispensable Defendants in this action because these partners are alleged distributors and suppliers of

Microsoft's software and therefore, Defendants infer, the business partners must have committed copyright infringement by illegally distributing the software here at issue.  However, Plaintiff has not alleged that its business partners illegally distributed its software, and there is no basis for the Court to make such an inference.  Moreover, even if the Court were to make such an inference, it is well-settled that "in patent, trademark, literary property, and copyright infringement cases, any member of the distribution chain can be sued as an alleged joint tortfeasor." *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 207 (D.C. Cir. 1981) (citations omitted).  Thus, "[s]ince joint tortfeasors are jointly and severally liable, the victim of [copyright] infringement may sue as many or as few of the alleged wrongdoers as he chooses; those left out of the lawsuit . . . are not indispensable parties."  *Id.* (citing 3A Moore's Federal Practice P 19.14 (2.-4) (2d ed. 1979)).  Thus, Defendants' argument that Microsoft's business partners are necessary and indispensable parties is completely without merit.

As to Technology Enterprises, Defendants appear to argue that Technology Enterprises must be joined as a Defendant in this action because it is one of Defendants' suppliers and must therefore be an infringer.  However, under the aforementioned principle of joint and several liability, "which governs not only common law tort[s] . . . but also the federal statutory tort of copyright infringement . . . the victim of a tort is entitled to sue any of the joint tortfeasors and recover his entire damages from that tortfeasor." *Salton, Inc. v. Philips Domestic Appliances & Personal Care B.V.*, 391 F.3d 871, 877 (7th Cir. 2004) (citing *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 360 (2d Cir. 2000); *Costello Publishing Co. v. Rotelle*, 670 F.2d 1035, 1043 (D.C. Cir. 1981); 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04[E][2][d] (2004)).   Therefore, it is clear that Technology Enterprises is not an

indispensable party by virtue of its alleged status as one of Defendants' suppliers.

Defendants also point to a separate copyright infringement lawsuit brought by Microsoft against Technology Enterprises, which is currently pending in this district before Judge Hoeveler. *See Microsoft Corp. v. Technology Enterprises, LLC, et al.*, No. 06-22800-CIV-HOEVELER. However, the fact of Microsoft's lawsuit against Technology Enterprises now pending before Judge Hoeveler does not compel dismissal of this action pursuant to Rule 12(b)(7).  To the extent Defendants are arguing that the cases should be consolidated because they involve similar issues of fact and law, Defendants should move for consolidation by separate motion.  Accordingly, Defendants' motion for dismissal pursuant to Rule 12(b)(7) must be denied.

III.    DEFENDANTS' RULE 12(e) MOTION

Defendants move in the alternative for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).[2]  Federal Courts disfavor motions for a more definite statement, in view of the liberal pleading and discovery requirements set forth in the Federal Rules of Civil Procedure.  *See Hobbs v. BH Cars, Inc.*, 2004 WL 1242838, *2 (S.D. Fla. June 4, 2004) (citing *Bazal v. Belford Trucking Co.*, 442 F. Supp. 1089, 1101-2 (S.D. Fla. 1977)).  Pleadings provide notice, whereas discovery procedures provide "the intricacies of the issues and evidence for trial."  *Id*. (citing *Betancourt v. Marine Cargo Mgmt.*, 930 F. Supp. 606, 608 (S.D. Fla. 1996)).  Thus, a motion for a more definite statement will be granted only if "'the pleading is so vague or ambiguous that the opposing party cannot respond in good faith or without prejudice to

---

[2]Rule 12(e) of the Federal Rules of Civil Procedure provides in relevant part: "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading.  The motion shall point out the defects complained of and the details desired."

himself.'" *Id.* (quoting *Adelphia Cable Partners, L.P. v. E & A Beepers Corp.*, 188 F.R.D. 662, 665 (S.D. Fla. 1999)).   The Court finds that Plaintiff's complaint and claims against Defendants are not so vague and ambiguous that Defendants cannot respond in good faith or without prejudice.[3]   Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss Complaint and Alternative Motion for More Definite Statement is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 5th day of August, 2008.

_____

URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record

---

[3]In reaching this determination, the Court notes Defendants' arguments that the complaint is deficient due to the absence of allegations as to the following: (1) "whether or not Microsoft manufactured the subject Work"; (2) "where, in what country, the Work was manufactured"; (3) "whether Microsoft received any 'reward,' consideration, compensation or other benefit from the first sale of the Work"; (4) "where, in what country, and when the actual first sale of the Work occurred and [ ] what Microsoft business partner(s) were involved in that first sale of the Work"; (5) "whether the work was first exported out of the United States and then imported into the United States"; (6) "the chain of sale known by Microsoft or believed to exist by Microsoft for the sale of the Work from Microsoft through to the named Defendants"; and (7) "any license agreements or use restrictions that Microsoft contends actually exist and are directly entered into between Microsoft and any of the named Defendants."  However, the lack of specific allegations concerning the foregoing subjects is not fatal, and does not warrant entry of an Order requiring a more definite statement.

14